**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH CURL,** | : | |
| | : | **Case No. C2-03-919** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| | : | |
| **GREENLEE TEXTRON, INC.,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment.  Plaintiff Joseph Curl filed a breach of contract action against Defendant Greenlee Textron, Inc.

For the following reasons, the **GRANTS** Defendant's Motion for Summary Judgment.

### II.  FACTS

Plaintiff Joseph Curl ("Plaintiff") is a resident of Delaware County, Ohio.  By virtue of an Assignment of Claims, Plaintiff is the successor to all of the rights of Ralph and Curl Engineers ("R & C"), an Ohio corporation, regarding its June 1989 confidentiality agreement with Defendant.  Defendant Greenlee Textron, Inc. ("Greenlee"), a Delaware corporation with its principal place of business in Illinois, sells a wide variety of tools, primarily through its catalog business.

In 1988 and 1989, Greenlee negotiated with Plaintiff to purchase significant quantities of a "recessed light hole saw,"[1] one of R & C's products.  Plaintiff created Beacon Industries ("Beacon"), a California corporation, to enter into a business arrangement with Greenlee under the terms of which R & C would design and develop saws which Beacon would manufacture in California.  Both parties considered Plaintiff to be employee of R & C in connection with the work he performed in designing and developing the saws.  No one ever sought or obtained a patent for the R & C design.

In 1989, through Plaintiff, Beacon and Greenlee negotiated to develop a product purchase and distributor agreement (the "Draft Agreement") contemplating that Beacon would provide recessed light hole saws bearing the "Greenlee" name at a set price.  The Draft Agreement provided that Greenlee would have the right to inspect and test the recessed light hole saws it received from Beacon.

During the parties' negotiations, Beacon furnished Greenlee with product samples.  In connection with those samples, Greenlee requested a drawing of the recessed light hole saw backplate, a "Can-Master Hub," for quality control purposes.  Before sending Greenlee the drawing, Plaintiff mailed Greenlee a confidentiality agreement (the "Agreement") to ensure that Greenlee kept the drawing confidential.  The Agreement stated:

> [p]lease be advised that this drawing and any or all technology revealed therein is the sole property of Ralph and Curl, Engineers and is for your own use only.

> This information is *confidential* and is not to be divulged without the express written consent of Ralph and Curl.  Any and all drawings, data, specifications, technology or any

---

[1]A "recessed light hole saw" is a hole saw attaching to a standard drill, which is designed to cut holes for installation of recessed lighting.  Plaintiff contends that he designed and developed R & C's recessed light hole saw with the help of his father, Henry Curl, a principal with R & C.

> other information pertinent to the enclosed drawing must be surrendered to Ralph and
> Curl upon demand, subject to the terms and conditions of the agreement.[2]

(emphasis added).  On or around June 13, 1989, Tom Fewell, a Greenlee representative, signed

the Agreement at his Illinois office, and returned it, by mail, to Plaintiff in Ohio.  Shortly after

Plaintiff had received the signed Agreement, R & C mailed Greenlee a copy of the confidential

drawing.  In August 1989, Beacon suffered financial difficulties and voluntarily ceased

operations.  As a result, Beacon and Greenlee ended their negotiations and did not finalize the

distribution plan outlined in the Draft Agreement.

Greenlee, still inclined to distribute recessed light hole saws, began to design and

produce its own saw product line in the fall of 1989.  Greenlee's lead engineer, Tom Pearson

("Pearson"), obtained samples of recessed light hole saws from both Beacon and Lenox (a

competitor) that were available on the open market.  Greenlee's design, tooling, and production

activities occurred from late 1989 through August 1991, when Greenlee unveiled its new

recessed light hole saw for production.  At that time, Greenlee circulated a flier announcing its

new saw model and placed the product on the market.  Plaintiff contends that Greenlee's new

saw model is identical to that of R & C in all material aspects.

On October 10, 2003, Plaintiff sued Greenlee for breach of contract and misappropriation

of the drawings and technology revealed in reliance upon the Agreement.  This Court has

diversity jurisdiction over the matter and venue is proper because a substantial part of the events

giving rise to Plaintiff's claim occurred in this district.

---

[2]The parties did not draft a choice of forum provision in their Confidentiality Agreement.
Choice-of-law has now become the crux of the parties' dispute.

Plaintiff claims that Greenlee illegally used the R & C drawing for purposes beyond quality control and failed to surrender the drawing back to R & C when negotiations between Beacon and Greenlee failed.  Plaintiff seeks judgment against Greenlee for money damages, equitable relief in the form of a constructive trust, and reasonable royalties or other future damages to the extent Greenlee continues to "make, market, license, or otherwise generate revenue from any products derived from the [Agreement]."

Greenlee moved for Summary Judgment claiming that the Statute of limitations on Plaintiff's breach of contract claim had run and asserting an equitable defense of laches. Plaintiff replied, asserting that Ohio's statute of limitations, not Illinois', applied to the parties' dispute, and that, therefore, the statute of limitations on Plaintiff's breach of contract claim had yet to run.  Further, Plaintiff argued that Greenlee failed to assert sufficient facts to support its laches defense.  Greenlee filed its reply.

The Court must now consider whether to grant Greenlee's Motion for Summary Judgment.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th

Cir. 1993).  In response, the non-moving party must then present "significant probative

evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."

*Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light

most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The Court also must interpret all reasonable inferences in the non-movant's favor.  *United States*

*v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of

the non-moving party and must refrain from making credibility determinations or weighing the

evidence).  The existence of a mere scintilla of evidence in support of the non-moving party's

position will not be sufficient; however, there must be evidence from which the jury reasonably

could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986);

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment appropriate when

"the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party").

## IV.  ANALYSIS

### A. Introduction

As a threshold consideration, Plaintiff and Defendant disagree over which state's law

governs this dispute.  Though Plaintiff asserts that Ohio law is controlling, Defendant counters

that because Illinois is more significantly related to the parties and the case, Illinois law applies.

This Court has diversity jurisdiction under 18 U.S.C. § 1332.  A federal court sitting in diversity must apply the substantive law, including choice-of-law rules, of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941); *N. River Ins. Co. v. Employers Reins. Corp.*, 197 F. Supp. 2d 972, 979 (S.D. Ohio 2002).  Nevertheless, "[a]bsent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach [of contract]. . ." *Godwin v. Real Estate Inv. Mgmt., Inc.*, 2001 WL 1681122, at * 4 (S.D. Ohio Aug. 21, 2001).  Before the 1980s, the "substance/procedure dichotomy" dominated Ohio conflicts of law jurisprudence.  *See Id.*  Ohio courts traditionally applied the *substantive* law of the place of the injury (the *lex loci delicti* doctrine) and the *procedural* law of the forum (*lex fori*). *See Phelps*, 30 F.3d at 661 (referencing *Ellis v. Garwood*, 152 N.E.2d 100 (Ohio 1958); *Howard v. Allen*, 283 N.E.2d 167 (Ohio 1972)).  As such, because "[s]tatutes of limitations are . . . characterized as *procedural* for purposes of choice-of-law analysis in Ohio and most other states," Ohio courts applied Ohio statutes of limitations to determine whether or not a claim was untimely.  *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (emphasis added) (citing EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS § 3.9 (1984)).

These formalistic rules, however, "have gradually fallen out of favor in Ohio and elsewhere," and the national trend in choice-of-law litigation has been to replace the traditional conflict-of-law rules with a more "flexible case-by-case approach."  *See id.*[3]  In 1985, the Ohio

---

[3]"The most significant relationship rule has been characterized as the beginning of a workable, fair, and flexible approach to choice-of-law which will become more certain as it is tested and further refined when applied to specific cases."  *See Griffith v. United Air Lines*, 203 A.2d 796 (Pa. 1999). It recognizes the most significant relationship with the occurrence and important contacts as more properly controlling than the 'wooden application' of a strict rule."  *Fabricius v. Horgen*, 132 N.W.2d 410 (Iowa 1965).

Supreme Court formally adopted this more flexible approach, "recognizing that the Restatement's balancing test applying the law of the state with the 'more significant relationship' to the lawsuit was 'more reflective of [Ohio's] past decisions and also provide[d] sufficient guidelines for future litigation.'"  *See Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-89 (Ohio 1984) ("[w]e hereby adopt the theory stated in the Restatement of the Law of Conflicts. . ." (the "RESTATEMENT")); *see also id*.

B. Choice-of-Law

RESTATEMENT § 142[4] sets forth the choice-of-law analysis for statutes of limitations, but it was substantially revised in 1988.[5]   Hence, this Court must not only determine whether Ohio

---

[4]The original version of RESTATEMENT § 142 reads:

> (1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.
> (2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state, except as stated in § 143.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (1971).  However, in 1988, the ALI revised section142 to read as follows:

> Whether a Claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6.  In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> > (1) The forum will apply its own statute of limitations barring the claim.
> >
> > (2) The forum will apply its own statute of limitations permitting the claim unless:
> >
> > > (a) maintenance of the claim would serve no substantial interest of the forum; and
> > >
> > > (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (1988) (the "1988 Revision").

[5]Further, Plaintiff argues that the 1971 version of Section 142 and the 1988 Revision are significantly different.  The 1971 version adopted the traditional common law approach under which the law of the forum state governed on procedural matters. *See Resner v. Owners Ins. Co.*, 2002 WL 236970, at *2 (Ohio App. 2002).  Meanwhile, the Revision adopted an "interest

-7-

courts have adopted Section 142, but also whether they have adopted the 1988 Revision.  Only

after the Court determines how Ohio courts resolve this issue can it determine the merits of the

case.

1. Whether to Adopt R<small>ESTATEMENT</small> § 142

Defendant posits R<small>ESTATEMENT</small> § 142, governing choice-of-law disputes over statutes of

limitations, is wholly applicable to the case sub judice.  Plaintiff contends, however, that as Ohio

courts have never formally adopted R<small>ESTATEMENT</small> § 142, it is inapplicable to the parties'

dispute.  Defendant counters that the Ohio Supreme Court's long-term commitment to the

R<small>ESTATEMENT</small> includes, by implication, section142.

The Ohio Supreme Court has never expressly adopted R<small>ESTATEMENT</small> §142.  *See Resner

v. Owners Ins. Co.*, 2002 WL 236970, at *2-3 ("[t]he Supreme Court of Ohio has never adopted

section 142").  Nevertheless, many Ohio courts have chosen to employ section 142 when

deciding what state's statute of limitations to apply in a choice-of-law dispute.  *See Males v.

W.E. Gates & Assoc.*, 504 N.E.2d 494, 495 (Ohio Com. Pl. 1985) (applying R<small>ESTATEMENT</small> § 142

to determine that Ohio's statute of limitations applied, as opposed to Virginia's); *Cole v. Mileti*,

133 F.2d 433, 437 (6th Cir. 1998) (adopting R<small>ESTATEMENT</small> § 142 to require Ohio courts to apply

Ohio's statute of limitations to breach of contract actions brought in Ohio, even if the action

were time-barred in another state); s*ee also Godwin v. Real Estate Inv. Mgmt., Inc.*, 2001 WL

1681122, at *3-4 (S.D. Ohio Aug. 21, 2001) (applying R<small>ESTATEMENT</small> § 142 to determine which

---

analysis approach recognized by the drafters as the 'emerging trend' among courts."  *DeLoach v.
Alfred*, 960 P.2d 628, 629 (Ariz. 1998).  The ALI intended for the1988 Revision to recognize
that choice-of-law questions relating to statutes of limitations should be decided in much the
same way as other questions of choice-of-law.  *See id.* (citing Reporter's Note to Revised
R<small>ESTATEMENT</small> (S<small>ECOND</small>) <small>OF</small> C<small>ONFLICT OF</small> L<small>AWS</small> § 142 (1988)).

state's statute of limitations to apply when a conflict arose as to which state's statute of limitations would govern).  Defendant argues that these cases demonstrate that *Resner* was an anomaly, and that, considering Ohio courts' long-standing reliance on the RESTATEMENT, if given the option today, the Ohio Supreme Court would likely adopt the RESTATEMENT § 142 for choice-of-law disputes involving statutes of limitations.

Because of the necessity of the federal court sitting in diversity to apply the state law, the Court is often required to engage in predictive decision-making.  *See Washburn v. Soper*, 319 F.3d 338, 342 (8th Cir. 2003) (because the Iowa Supreme Court had adopted the RESTATEMENT for other choice-of-law issues, the federal district court correctly decided that, by implication, Iowa courts would apply section 142 for disputes over which state's statute of limitations to use); *see Held v. Mnfr.'s Hanover Leasing Corp.*, 912 F.2d 1197, 1202-03 (10th Cir. 1990) (adopting RESTATEMENT § 142 in lieu of the common law rule that a forum state should always apply its own statute of limitations); *see Roulston v. Foree Tire Co.*, 1990 WL 35216, at *4 n.2 (9th Cir. Mar. 29, 1990) (". . . in light of Arizona's strong commitment to the [RESTATEMENT ], it is arguable that the Arizona Supreme Court would follow the Restatement's lead. . ." for choice-of-law disputes over statutes of limitations).

*Washburn* is the most similar to the instant case.  *See* 319 F.3d at 342.  In *Washburn*, the parties disputed whether to apply Iowa's five-year statute of limitations or Illinois' two-year statute of limitations to plaintiffs' attorney malpractice claim.[6]  *Id*.  Though, at the time, Iowa courts had never formally adopted RESTATEMENT § 142, the district court predicted that, if it

---

[6]In the case sub judice, applying Illinois law would bar Plaintiff's claim.  Similarly, in *Washburn*, the application of Illinois law would have barred plaintiffs' attorney malpractice claim.  *Washburn*, 319 F.3d at 342.

were ever faced with the issue, the Iowa Supreme Court would follow RESTATEMENT § 142. *Id.* at 341. The Eighth Circuit Court of Appeals agreed that the Iowa Supreme Court's commitment to the RESTATEMENT for analyzing choice-of-law issues,[7] provided a "clear and persuasive indication" that it would modify its approach to conflicts involving statutes of limitations as well. *Id.* at 342.[8]

Similarly, the Ohio Supreme Court has committed to making a shift from the procedural/substantive law-making of the past to the more functional "most significant relationship" approach of the RESTATEMENT. In *Morgan*, the Ohio Supreme Court rationalized its decision to adopt the RESTATEMENT, writing, ". . . it is apparent that the traditional rule of *lex loci delicti* is still viable in Ohio, but is no longer used to automatically determine the prevailing state law. Other interests of the states involved within the controversy must be thoroughly

---

[7]The Eight Circuit explained that the Iowa Supreme Court has "repeatedly turned to the Restatement in analyzing choice-of-law issues." *Id.* at 342 (citing *Veasley v. CRST Int'l., Inc.*, 553 N.W. 2d 896, 897 (Iowa 1996) (noting that in the context of a personal injury case, that "[w]e now follow the Restatement's 'most significant relationship' methodology for choice-of-law issues.") (citations omitted); *Gabes Constr. Co., Inc. v. United Capitol Ins. Co.*, 539 N.W. 2d 144, 146 (Iowa 1995) ("We determine choice-of-law issues in insurance policy cases by the intent of the parties or the most significant relationship test.") (citation omitted); *Cameron v. Hardisty*, 407 N.W. 2d 595, 597 (Iowa 1987) ("Iowa has adopted the 'modern' choice-of-law rules [with respect to tort issues]. . . "); *Cole v. State Auto. & Cas. Underwriters*, 296 N.W. 2d 779, 781 (Iowa 1980) ("We think it is clear that choice-of-law questions [involving contract issues] are now to be determined under the Restatement (Second) test: intent of the parties or the most significant relationship."); *see also Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101, 1106 (S.D. Iowa 1998) ("Iowa has adopted the Second Restatement of Conflicts as its choice-of-law provision.").

[8]The Eighth Circuit made a similar ruling in *F.D.I.C. v. Nordbrock*, 102 F.3d 335, 338 (8th Cir. 1996). Defendant asserts that *Norbrock* stands for the proposition that the Nebraska Supreme Court's previous reliance on the RESTATEMENT shows that it would likely adopt the 1988 Revision of RESTATEMENT § 142. This Court finds, however, that the *Nordbrock* court decided that Nebraska courts would use the forum state's statute of limitations unless such a decision would *severely prejudice* the opposition. *Id.* (emphasis added).

analyzed. Thus the query becomes what specific factors should our courts consider in making an equitable choice-of-law determination." 474 N.E.2d at 288. Therefore, though there is no seminal case in which the Ohio Supreme Court expressly adopts RESTATEMENT § 142, this Court cannot ignore Ohio courts' commitment to the RESTATEMENT 's approach to conflicts issues. *See Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 2005 WL 2840449, at *3 (Ohio App., Oct. 31, 2005) (adopting the RESTATEMENT for subrogation claims); *Glover v. Smith*, 2003 WL 823493, at *1 (Ohio App. Mar. 7, 2003) (adopting the RESTATEMENT for claims involving uninsured motorists); *Waco Scaffolding Co. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, PA*, 1999 WL 980629, at *2 (Ohio App. Oct. 28, 1999) (applying the RESTATEMENT to determine what law will govern a contract).

In addition to the fact that Ohio courts adhere to the RESTATEMENT, the Ohio Legislature's re-enactment of the state's borrowing statute, in April 2005, provides further evidence that Ohio uses the more modern functional approach to conflicts questions in lieu of the rigid substantive/procedural approach. *See* OHIO REV. CODE § 2305.03 (2005).[9] As discussed above, the latter approach led to widespread forum-shopping. In other words, plaintiffs,

---

[9]The current version of the Ohio Borrowing Statute reads:

> 2305.03 Lapse of time as bar to civil action
> (A) Except as provided in division (B) of this section and unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code. If interposed by proper plea by a party to an action mentioned in any of those sections, lapse of time shall be a bar to the action.
> (B) No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction has expired or that period of limitation that applies to that action under the laws of this state has expired.

OHIO REV. CODE § 2305.05 (2005).

knowing that the state in which their claim actually accrued would procedurally bar their claim, intentionally brought the same claim in a state with rules that would allow that claim to proceed.[10]  To eliminate forum shopping, in addition to adopting a more functional analysis of conflicts issues, many states also enacted borrowing statutes under which a state will refuse to hear a claim that accrued in another state.  *See Combs v. Int'l. Ins. Co.*, 354 F.3d 568, 596 (6th Cir. 2004) (finding that borrowing statutes impede forum shopping, effectuate the goals of statutes of limitations and repose, and demonstrate respect for other states' sovereignty).

Though, at oral argument, Defendant conceded that there was no precedent showing that Ohio courts would apply § 2305.03 retroactively,[11] this Court agrees with Defendant that RESTATEMENT § 6 asks courts to consider the state legislature's enactment of a borrowing statute to be important in considering a state's policy preferences.[12]  They assert, and this Court agrees,

---

[10]At oral argument, Plaintiff conceded that the rigid substantive/procedural approach irrefutably led to widespread forum shopping, and that courts were loathe to allow such blatant manipulation of the judicial system by plaintiffs.

[11]The Plaintiff and Defendant still dispute whether the claim actually accrued in Illinois or Ohio, so, even if the Defendant were able to convince the Court to apply the borrowing statute retroactively, it would still have to prove that Illinois was the state "more significantly related" to the parties and their litigation.

[12]RESTATEMENT § 6 lays out the general factors relevant to a choice-of-law inquiry, which include:

> (2)(a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular field of law;
> (f) certainty, predictability and uniformity of result; and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.  A borrowing statute is evidence that a state

that Ohio's re-enactment of § 2305.03 is substantive evidence that Ohio courts decided to depart

from the traditional substantive/procedural approach, in part, in order to preclude forum

shopping.

Accordingly, because Ohio precedent supports a commitment to the RESTATEMENT, and

because Ohio's re-enacted borrowing statute is evidence of the state's policy preference for

precluding the forum shopping arising from the use of the rigid substantive/procedural

dichotomy, this Court adopts RESTATEMENT § 142 to determine which state's statute of

limitations applies in this case.

### 2. Whether to Apply the 1988 Revision

Having determined that RESTATEMENT § 142 applies, the court's next inquiry is whether

the 1988 revision to RESTATEMENT § 142 applies.  In 1988, the American Law Institute ("ALI")

significantly revised section 142.  *See DeLoach*, 960 P.2d at 628.[13]  *See supra*, notes 5 & 6.

Plaintiff contends that should the Court decide to adopt RESTATEMENT §142, it should use the

1971 pre-revision version; Defendant counters that the Court should adopt the 1988 Revision.

---

wants to eliminate the problem of "forum shopping."

[13]In *DeLoach*, the court wrote:

> As the court of appeals explained, the revised RESTATEMENT displaced the traditional
> substantive/procedural analysis concerning statutes of limitations with the choice-of-law
> interest factor analysis stated in [RESTATEMENT] section 6.  However, the court failed to
> recognize the Section 142 does not simply import the pure interest analysis of section 6.
> Rather, revised section 142 begins with the *general rule* that the limitations period of the
> forum will apply; unless exceptional circumstances make such a result unreasonable and,
> in cases in which the claim will not be barred under the forum's statute, either of the
> conjunctive factors stated in section 142(2) not satisfied.

*See* 960 P.2d at 631. (citing *New England Tel. & Tel. Co.v. Gourdeau Constr. Co.*, 647 N.E.2d
42, 45 (Mass. 1994)).

Defendant premises its argument on the fact that Ohio courts have remained committed to the RESTATEMENT since the Ohio Supreme Court's decision in *Morgan*. Further, Defendant posits that in *Resner v. Owners Ins. Co.*, a recent case, when the court referenced RESTATEMENT § 142, it cited the 1988 Revision, not the pre-revision version. *See* 2002 WL 236970, at *2.[14] Though the *Resner* court did not apply RESTATEMENT § 142, Defendant contends that the Court considered adopting the 1988 Revision, not the pre-revision version. *Id.*

Tellingly, in each of the other Ohio cases the parties cite, the court relies on the 1971 version of the RESTATEMENT § 142, not the 1988 Revision. *See Schwartz v. Cincinnati Museum Assoc.*, 35 Fed.Appx. 128 (6th Cir. 2002) ("[t]he Ohio statute of limitations governs because, in a diversity action, this court must look to the forum state's choice-of-law rules, and in Ohio, the statutes of limitations of the forum state are applied even if the facts of the case creating the cause of action dictate the use of other substantive law.") (internal citations omitted); *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (applying Ohio's longer, rather than California's

_____

[14]In *Resner*, plaintiff-appellants' were Florida residents involved in a car accident in Connecticut, who had sued defendant-appellee, their insurance company with its primary place of business in Lima, Ohio, in an Allen County Ohio court. 2002 WL 236970, at *2. In its original decision, the trial court applied Ohio Supreme Court law, which adopted RESTATEMENT § 188. *Id.* The court found that, because Florida had the "most significant relationship to the transaction and the parties," and because Florida's five-year statute of limitations barred plaintiff-appellants' complaint, the court should grant defendant-appellees' motion for summary judgment. Plaintiff-appellants appealed setting forth three assignments of error: (1) The court should have applied Ohio common law to determine that the state's procedural law should apply; (2) If the RESTATEMENT rather than common law is found to apply, the court should have applied § 142 of the RESTATEMENT instead of § 188; (3) Applying § 142 to the facts, Ohio's statute of limitations applies, and plaintiff-appellants' claims are not time-barred. *Id.*

In granting plaintiff-appellants' appeal, the *Resner* court found that, under the first assignment of error, the lower court should have applied the state of Ohio's procedural law, applying Ohio's statute of limitations to allow plaintiff-appellants' case to proceed. *Id.* Accordingly, the Ohio court did not reach the issue of whether Ohio courts would adopt § 142 of the RESTATEMENT. *Id.*

shorter, statute of limitations, to the contract dispute, which was governed in substance by California law); *Charash v. Oberlin Coll.*, 14 F.2d 291 (6th Cir. 1994) ("[t]he courts of Ohio have consistently applied Ohio's statutes of limitations, and the Supreme Court of the United States has found no constitutional impediment to this practice."); *Godwin*, 2001 WL 1681122, at *3 ("[a]bsent an express statement that the parties intended another state's limitations to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract.").

Plaintiff argues that should a court decide to adopt a RESTATEMENT, it need not accept the most up-to-date version. *Bongaards v. Millen*, 793 N.E.2d 335, 348-49 (Mass. 2003). In *Bongaards*, a surviving spouse brought action against a testator's estate for a declaratory judgment on an elective share of real property and a bank account held in trust by the testator. *See id.* The court noted that although, "[i]n the earlier Restatement [of Property], only those trusts created and controlled by the decedent spouse were eligible for inclusion in the elective share estate," the revised "Restatement [of Property] dispense[d] with that express restriction and include[d] in the elective share all property 'owned in substance,' including property acquired 'by gift or otherwise from someone else.'" *Id.* (Comparing RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 13.7 and cmt. a (1986) with RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 9.1(c) and cmt. j (2003)). The court reasoned that, the "approval of one section of one version of a Restatement does not commit the court to adopt whatever differing approach is taken in some later Restatement." *Id.* at 348. This statement supports Plaintiff's assertion that regardless of whether the Ohio Supreme Court

adopted the RESTATEMENT in *Morgan*, it would not be required to adhere to the1988 Revision of RESTATEMENT § 142 as well.

This Court finds, however, that *Bongaards* is inapposite. First, the *Bongaards* court noted that property disputes comprise an especially sensitive area of the law, stating, "[i]n the area of property law, the retroactive invalidation of an established principle is to be undertaken with great caution." *Id*. at n.1 (citing *Sullivan v. Burkin,* 460 N.E.2d 572 (1984)). We can find no cases in the area of contract law where courts were similarly furtive. Further, the *Bongaards* court refused to adopt the Restatement revision in question, in part, because such a decision would act to amend the state's elective share statute without the input of the Massachusetts legislature. *Id*. The court declined to resolve an issue better suited for legislative determination:

> Whatever its merits, the mere fact that a new Restatement has been issued does not, and should not, cause us to reinterpret a statutory term that long predates the promulgation of either Restatement. To the extent that the Legislature wishes to amend the elective share statute to insert more modern concepts from the current Restatement, that is the legislature's prerogative.

*Id*. at 349.

In this case, unlike in *Bongaards*, the1988 Revision of RESTATEMENT § 142 does not seek to "amend" the Ohio Statute of Limitations on breach of contract actions but merely presents a more modern method of interpreting section142 that is arguably more consistent with the RESTATEMENT'S functional "most significant relationship" approach. Although the Ohio Supreme Court's decision to adopt the RESTATEMENT for substantive law purposes was decided several years before the ALI drafted the 1988 Revision, there are no prudential reasons why the Ohio Supreme Court would not also adopt the 1988 Revision. Indeed, that revision only refines

-16-

the most significant relationship approach already embraced by the court. Moreover, the

majority of circuits adopting the RESTATEMENT apply the 1988 Revision's "most significant

relationship" approach when deciding statutes of limitations issues. *See Ortiz v. Gaston County*

*Dyeing Machine Co.*, 277 F.3d 594-96 (1st Cir. 2002) (barring plaintiff's claim under the

Massachusetts statute of limitations because Massachusetts was more significantly related to the

parties and the occurrence); *see Warner v. Auberge Gray Rocks, Inn, Ltee.*, 827 F.2d 938 (3d Cir.

1987) (applying the 1988 Revision, aligning choice-of-law questions related to statutes of

limitations with other choice-of-law questions); *Jaurequi v. John Deere Co.*, 986 F.2d 170 (7th

Cir. 1993) (applying the "most significant relationship" analysis to determine that Missouri law

applied in lieu of Illinois law); *see e.g. Roulston*, 1990 WL 35216 *4 (because of Arizona's long-

term reliance on the RESTATEMENT, the Ninth Circuit Court of Appeals found that the Arizona

Supreme Court would likely adopt the 1988 Revision)[15]; *see Held*, 912 F.2d at 1202-03 (the

Tenth Circuit Court of Appeals applied the 1988 Revision).[16]

---

[15]In *Frankston v. Aura Sys., Inc.*, 1995 WL 227397 (9th Cir. Apr. 17, 1995), the Ninth Circuit
Court of Appeals declined to apply the 1988 Revision *retroactively* to decide the applicable
statute of limitations because the Massachusetts Supreme Court had adopted the 1988 Revision
after the parties had begun litigating their dispute. In all other more recent cases, however, the
Ninth Circuit has employed the 1988 Revision.

[16]As evidenced above, the First, Third, Seventh, Ninth and Tenth circuits have all applied the
1988 Revision. This Court, however, has found no case law in which the D.C., Second, Fourth,
Fifth, Eighth, and Eleventh circuits expressly rejected the 1988 Revision. The Court found only
two cases in which a district court clearly declined to adopt the 1988 Revision: *see Woolley v.
Clifford Chance Rogers & Wells, L.L.P*, 2004 WL 57215, at *4 (N.D. Tex. Jan. 5, 2004)
(declining to adopt, sua sponte, the 1988 Revision despite Texas courts' lasting commitment to
the RESTATEMENT for choice-of-law issues); *see Metropolitan Life Ins. Co. v. Dent*, 2003 WL
292161, at *1 (N.D. Tex. Feb. 3, 2003) (though the Tenth Circuit adopted RESTATEMENT § 142
for determining which state's statute applies "when the federal statute does not prescribe a
limitations period," the Fifth Circuit follows "the bright-line rule that the applicable limitations
period is that of the analogous statute of limitations for the forum state").

Considering Ohio's long-term commitment to the RESTATEMENT's functional analysis of choice-of-law issues and in light of the majority of the circuits' adoption of the 1988 Revision and considering , this Court will apply the 1988 Revision to the case sub judice.

### 3. Analysis under the 1988 Revision

The1988 Revision reads,

> Whether a Claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6.  In general, unless the exceptional circumstances of the case make such a result unreasonable:
> (1) The forum will apply its own statute of limitations barring the claim.
> (2) The forum will apply its own statute of limitations permitting the claim unless:
> (a) maintenance of the claim would serve no substantial interest of the forum; and
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (1988).  As such, the Court must consider the principles of RESTATEMENT § 6 in its analysis.

### a. Determining the "Most Significantly Related" State – RESTATEMENT § 188

RESTATEMENT § 188 provides a list of "connecting policy factors" to consider for choice-of-law issues surrounding contractual disputes.  While Defendant asserts that section 188's policy factors prove that Illinois is more significantly related to the parties' dispute than Ohio, Plaintiff counters that, in fact, the opposite is true.  Section 188 reads:

> (2) In absence of an effective choice-of-law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place of contracting;
> (b) the place of negotiation of the contract;
> (c) the place of performance;
> (d) the location of the subject matter of the contract; and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

-18-

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188.  The Court will weigh each of these factors to determine whether Ohio or Illinois law is more significantly related to the parties and their dispute.

### i. Place of Contracting

The place of contracting refers to the place where the last act necessary to give the contract binding effect occurred.  *See id*. cmt. e.  Though Defendant's brief did not allege that Plaintiff sent the confidentiality agreement and the drawing together in one package, Defendant contended as such at oral argument.  Plaintiff argues that it mailed Defendant the agreement for Defendant's signature *before* it sent Defendant the drawing.  When evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party; therefore, despite the parties' disagreement as to the facts, the Court will adopt the Plaintiff's contention that Plaintiff sent Defendant the Agreement before sending the drawing. *Adickes*, 398 U.S. at 157.

Defendant argues that Defendant's signature of the Agreement in Illinois constituted the last act necessary to give it binding effect.  Plaintiff, however, contends that the Agreement required performance before the parties became bound.  Plaintiff asserts that the last act necessary occurred in Ohio when R & C sent the drawing to Greenlee, after Greenlee had signed the Agreement and returned it to the R & C offices in Ohio.

In Ohio, an express contract "connotes an exchange of promises where the parties have communicated in some manner the terms in which they agree to be bound." *Ford v. Tandy Transp., Inc.*, 620 N.E.2d 996, 1008 (Ohio App. 1993) (citing *Cuyahoga Cty. Hosp. v. Price*, 581 N.E.2d 1125, 1127 (Ohio App. 1989)).  "In order to declare the existence of a contract, the

-19-

parties to the contract must consent to its terms, there must be a meeting of the minds of both parties and the contract must be definite and certain." *Id.* (citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 575 N.E.2d 134, 137 (Ohio 1991)).  Manifestation of mutual assent to an exchange "requires that each party either make a promise or begin to render performance." *Id.* (citing RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 18 (1981)). Further, manifestation may be made wholly or partly by written or spoken words, by other acts, or by the failure to act. *Id.* (citing RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 19(1) (1981)); *see also, Terex Corp. v. Grim Welding Co.*, 568 N.E.2d 739, 741 (Ohio App. 1989) (the term "contract" includes every description of agreement or obligation, *whether verbal or written,* whereby one party becomes bound to another to perform or omit to do a certain act).  Mutual assent is normally manifested by offer and acceptance where "an offer is the manifestation of willingness to enter into a bargain," made to justify another person in understanding that "his assent to that bargain is invited and will conclude it." *Id.* (referencing *Leaseway Distrib. Ctrs., Inc. v. Ohio Dept. of Admin. Serv.*, 550 N.E.2d 955, 961 (Ohio App. 1988)).

This Court finds that the parties' agreement did not require Plaintiff to send the drawing as an act of performance certifying mutual assent.  The Plaintiff's drafting and *signing* of the Agreement for Defendant's signature constituted a written offer to be bound by that Agreement. *Leaseway Distrib. Ctrs., Inc.*, 550 N.E.2d at 961 ("an offer is the manifestation of willingness to enter into a bargain," made to justify another person in understanding that "his assent to that bargain is invited and will conclude it).  After receiving the signed Agreement in the mail, Defendant's signing of that document created the parties' *mutual* assent to be bound.  Defendant

signed the Agreement in its Illinois office; therefore, the last act necessary to create the contract took place in Illinois, and Illinois is the place of contracting.

### ii. The Place of Contract Negotiation

Defendant contends that the contract was negotiated by both sides over the phone – Defendant from Illinois, and Plaintiff from California.  Plaintiff, on the other hand, argues that "there were no negotiations between Greenlee and R & C related to the contract, let alone negotiations in Illinois" and that "the mailing and returning of the contract constituted the sum-total of the [alleged] negotiations."

According to the RESTATEMENT, "the place of negotiation . . . is of less importance where there is no one single place of negotiations and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." RESTATEMENT (SECOND) OF CONFLICTS § 188, cmt. e; *see Int'l Ins. Co. v. Stonewall Inc. Co.*, 863 F. Supp. 599, 604 (S.D. Ohio 1994).  In this case, the parties negotiated by mail.[17]  Plaintiff negotiated from Ohio and Defendant from Illinois.  Therefore, neither state has a more significant connection to the place of negotiation.

### iii. The Place of Performance

Defendant contends that Greenlee's "use of the drawing for quality control purposes" took place in Illinois.  Plaintiff asserts, however, that because Greenlee's performance under the

---

[17]Though Plaintiff states that the mail communications did not constitute "negotiations," Plaintiff contends that its receipt of the signed Agreement in Ohio formed a binding agreement with Defendant.  Viewing the evidence in the light most favorable to the Plaintiff, the Court adopts Plaintiff's allegations that the parties did not have telephone conversations and interprets the parties' mail communications to be valid "negotiations."

contract was in no way limited to Illinois, and because the drawing was made in Ohio, the

performance of the contract was no greater in Illinois than it was in Ohio.  The Court finds, that,

in this case, the performance of the contract was greater in Illinois than in Ohio.  Defendant was

to use the drawing under the terms of the parties' confidentiality agreement.  Though this "use"

may not have been *limited* to Illinois, Plaintiff does not allege that Defendant did indeed use the

drawing in any other locales.  Hence, the drawing was used in Illinois, and Illinois is more

connected to the performance of the contract than Ohio.

### iv. Location of Subject Matter of the Contract

Defendant contends that Illinois was the location of the actual subject matter of the

contract, while Plaintiff argues that, because R & C retained "ownership" of the drawing under

the 1989 Agreement, the "location" was always at R & C's principal place of business, in Ohio.

Comment e reads,

> . . . [t]he state where the thing. . . is located will have a natural interest in transactions
> affecting it.  Also the parties will regard the location of the thing . . . as important.
> Indeed, when the thing. . . is the principal subject of the contract, it can often be assumed
> that the parties, to the extent that they thought about the matter at all, would expect that
> the local law of the state were the thing. . . was located would be applied to determine
> many of the issues arising under the contract.

RESTATEMENT (SECOND) OF CONFLICTS § 188, cmt. e; *see Power-Tek Solutions Serv. v.*

*Techlink*, 403 F.3d 353, 358 (6th Cir. 2005).  In this case, the location of the subject matter of the

contract was Illinois.  Location is traditionally interpreted to mean the "physical location."  *See*

*Power-Tek Solutions Serv.,* 403 F.3d at 358 (finding that where the alleged agreement involved a

chattel located in Michigan, that factor weighed in favor of applying Michigan law).  Defendant

possessed the R & C drawing in its offices in Illinois; therefore, despite Plaintiff's alleged

ownership and control of the drawing, this Court finds that it was located in Illinois.

v. The Parties' Respective Domiciles, Residences,
Nationalities, Places of Incorporation, and Places of Business

Finally, Defendant argues that the fact that Illinois housed its principal place of business was a good reason to apply the Illinois ten-year statute of limitations.[18]  Plaintiff, however, is an Ohio corporation, with its principal place of business in Ohio.  Where the parties' principal places of business are in two different states, Ohio courts consider both to be "connected" to the litigation.  *See id*. (where Defendant was a Tennessee corporation, and plaintiff was an Ohio corporation, the court found that the "place of business" factor pointed to both Tennessee and Ohio).  The Court finds that Illinois and Ohio are connected to both the parties and their dispute.  Thus this factor augurs in favor of neither Ohio nor Illinois.

Considering the foregoing functional analysis, the RESTATEMENT § 188 factors show that Illinois is "more significantly related" to the parties and their dispute than Ohio.  Applying Illinois' ten-year statute of limitations, the Court must bar Plaintiff's claim.  Thus, this Court **GRANTS** Defendant's motion for summary judgment, barring Plaintiff's claim under Illinois' statute of limitations.  By granting Defendant's motion for summary judgment on the issue of the applicable statute of limitations, Defendant's equitable defense of laches is moot.

### V.  CONCLUSION

---

[18]Plaintiff points out that Defendant is actually a wholly-owned subsidiary of Textron, Inc., a Delaware corporation with its principal place of business in Rhode Island.  The Court, however, does not believe that this fact de-emphasizes the significance of Defendant's connection to Illinois as its principal place of business.

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**, and this case is dismissed.

**IT IS SO ORDERED.**


                                  **s/Algenon L. Marbley**

                              **ALGENON L. MARBLEY**

                              **UNITED STATES DISTRICT JUDGE**

**DATED: December 16, 2005**